(35 Misc. Rep. 467.)

METROPOLITAN TRUST CO. OF CITY OF NEW YORK v. DOLGEVILLE ELECTRIC LIGHT & POWER CO. et al.

(Supreme Court, Special Term, Onondaga County. July, 1901.)

1. STREET RAILWAYS—TRUST MORTGAGE—AFTER-ACQUIRED PROPERTY.
   Laws 1890, c. 566, § 60, authorizes the incorporation of electric light companies by their making, signing, and acknowledging a certificate stating the objects of the corporation, etc., and the name of the town and county in which the operations are to be carried on, among other things; and thereupon the persons who signed the same, their associates and successors, shall be a corporation by the name so stated. Held, that a corporation organized under such statute had power to execute a trust mortgage securing its long-term bonds, which would cover after-acquired property, since, if such bonds were to become available and salable in the public market, it was a matter of public necessity that they should be secured by the lien of a mortgage on the company's extensions and new property.

2. SAME—ATTACHMENT—PRIORITY OF LIEN—FORECLOSURE—SALE AND PARCELS.
   Where, subsequent to the execution of a trust mortgage securing long-term bonds by an electric light company organized as a corporation under Laws 1890, c. 566, § 60, an attaching creditor of the corporation levied on wire bought by the corporation to extend its line, but which had not yet been strung, the mortgage was a superior lien to the execution subsequently issued by the judgment creditor, but on a sale of the property under foreclosure the property would be sold in parcels, and the wire sold last.

3. SAME—TERMS OF MORTGAGE—CONSTRUCTION.
   Where a mortgage executed by an electric light company to secure its bonds provided that it should cover all and singular the lands, tenements, and hereditaments, and the entire property of said electric light company, the mortgage was sufficient to cover after-acquired property.

4. SAME—CONSTRUCTION OF CHARTER—EXTENSION OF LINE.
   Where the charter of an electric light company provided that its objects were to be the manufacture and sale of electricity for light, heat, or power in the village of D., in the counties of H. and F., of the state of New York, and in other cities, villages, and towns in said state, such charter was sufficiently broad to authorize the company to extend its line into an adjoining town.

Action by the Metropolitan Trust Company of the City of New York, as trustee, etc., against the Dolgeville Electric Light & Power Company and others, for the foreclosure of a mortgage.

Motion to confirm the report of a referee appointed to compute the amount due upon a mortgage made by the defendant the Dolgeville Electric Light & Power Company to the plaintiff, as trustee, to secure the payment of $50,-000 worth of its 30-year 6 per cent. coupon bonds, given pursuant to a resolution of its board of directors, and with the written consent, to mortgage, of the owners and holders of more than two-thirds of its capital stock. The mortgage was dated May 1, 1897, and was recorded, with the said consent, as a mortgage of real property, in the county of Herkimer July 17, 1897, and in the county of Fulton September 29, 1900. The bonds were negotiated by the mortgagor in 1897, for value. The mortgagor defaulted in the payment of interest due in 1897 and in 1898, and has continued in default. It was incorporated under the transportation corporations law (Laws 1890, c. 566, § 60). Its certificate of incorporation contained the following statements, among others:

"Second.—Its objects are to be manufacturing and using electricity for producing light, heat or power and in lighting streets, avenues, public places and parks, and public and private buildings of the village of Dolgeville in the counties of Herkimer and Fulton, of said state of New York, and in other cities, villages and towns in said state, and of selling such electricity and the light, heat and power produced therefrom, as well as manufacturing and using the same.  *  *  *"

"Eighth.—The names of the town and county in which the operations of the corporation are to be carried on are the town of Manheim and the county of Herkimer, New York."

A stock corporation is given power to mortgage by the stock corporation law (Laws 1892, c. 688, § 2). The granting clause of the said mortgage conveyed: "All and singular the lands, tenements, and hereditaments and the entire plant and property of the said party of the first part [Dolgeville Electric Light & Power Company], described as follows, viz.: All the dynamos, beltings, wires, poles, insulators, cross irons, lamps, supplies, tools, structures, fixtures, rights general and special, all franchises, and also all lands, tenements, hereditaments acquired, and water rights or water powers or property which may hereafter be acquired, for the purposes of the said party of the first part, and all easements thereunto belonging or in any wise appertaining; also all machines shops, buildings, dams, water wheels, erections, and fixtures of any kind whatsoever, leaseholds, leases, rights under leases or under contracts, covenants, and agreements, terms or parts of terms now held or hereafter to be acquired for the use of said company, or in connection therewith; and also all engines, stock, and equipments now held or hereafter to be acquired, and all machinery, poles, equipments, fuel, and materials whatsoever now held or hereafter to be acquired; and all other property, real, personal, and mixed, now held or which may hereafter be acquired for said party of the first part in connection with its business and the operation and maintenance thereof, or as may be convenient or necessary for the uses or purposes thereof, and all rights, powers, privileges, and franchises now held or to be hereafter acquired by the said party of the first part connected with or relating to the Dolgeville Electric Light & Power Company for the uses or purposes thereof, except the franchise thereof by which the same is incorporated. Together with all improvements or additions made or to be made to any or all of said property and estates and their appurtenances by the said party of the first part or by others; and also all and every other estate, right, title, and interest, property, or thing which the said party of the first part owns and holds, or may or shall hereafter acquire, own, or hold, necessary or convenient for the use, occupation, or enjoyment of all or any of the said electric light plant, leases, and property, rights, privileges, and franchises, or any part or portion thereof. Together with all and singular the tenements, hereditaments, and appurtenances belonging to the property hereby conveyed or in any wise thereto appertaining, and the reversions, remainders, tolls, incomes, rents, issues, and

profits thereof; and also all the estate, right, title, interest, property, possession, claim, and demand whatsoever, as well in law as in equity, of the party of the first part of, in, and to the same, and any and every part thereof, with the appurtenances; and also all and every other estate, right, title, and interest, property, and appurtenances which the said party of the first part may hereafter acquire." On November 23, 1899, the defendant the Commercial Bank docketed a judgment in Herkimer county against the mortgagor, and on the same day issued execution thereon to the sheriff, who levied upon various personalty, including the wire in suit. He did not sell, as his proceedings were stayed. The "adjoining village" referred to in the opinion as the one in stringing a power line to which the wire was to be used was Little Falls, in the county of Herkimer. The defendant James D. Feeter was appointed permanent receiver of the mortgagor on December 26, 1900, in an action brought by the people against the mortgagor. The sheriff was not made a party defendant to the present action. The complaint herein was verified October 8, 1900. Judgment for plaintiff.

Parsons, Shepard & Ogden (Robert E. Drake, of counsel), for plaintiff.

John F. Wilson, for defendants Dolge and others.

McGuire & Wood, for defendant Commercial Bank.

Myron G. Bronner, for defendant Feeter, receiver.

W. & N. E. Kernan, for defendant Walter N. Kernan.

HISCOCK, J. This is a motion to confirm the report of the referee appointed to compute the amount due upon the bonds secured by the mortgage of which foreclosure is sought, and to ascertain whether the defendants, or any of them, had or claimed to have some interest in or lien upon the mortgaged premises which was subordinate to the lien of the mortgage and other matters. The main contest upon said motion, as at the time when the reference was ordered, is whether the lien of the plaintiff's mortgage or the lien of a judgment and levy secured by the defendant Commercial Bank is superior as to certain personal property acquired after the execution of the mortgage. This property consists principally, in value, of some wire purchased for the purpose of stringing a power line from the defendant's plant to an adjoining village, and which, at the time said bank secured its judgment, had not been actually strung, but was still in the coils. No question is made, however, that it was obtained for the purpose mentioned, and was about to be strung. I have no doubt that the terms of the mortgage were broad enough to cover this property, and give a lien upon it, when it was secured, which would be superior to the lien of said judgment. Neither have I any doubt that the powers of the defendant under its organization were broad enough to authorize its establishing the additional line in question into an adjoining town, assuming that that question can be raised at all in this proceeding. The controversy, therefore, reduces itself upon this point to the simple question whether a corporation like the defendant can, if it desires to, execute a mortgage which will cover after-acquired property. I believe that it can. It was conceded by the judgment creditor upon the argument that a railroad corporation could give a mortgage which would cover such property, but a distinction was sought between such a corporation and the one in question here. It was urged that the statutes governing railroad corporations gave

them larger powers in this respect than are given to the defendant. Without recourse to any extended reasoning, it seems to me that the statutes under which the defendant was incorporated give sufficient power to enable it to mortgage after-acquired property, and in the construction of such statute substantially the same reasoning must prevail in favor of recognizing the necessity of such powers in the case of one corporation as in the case of the other. The mortgage in question, as must generally happen in such a case, was executed to secure bonds running for a long period of time, and liable to be scattered in the hands of many holders. It probably was executed, and said bonds issued (and in most cases a similar course would be followed), for the purpose of securing money with which to build and equip a plant. Every corporation of the same class as that to which defendant belongs will, at least if it is successful and prosperous and thrifty, desire from time to time to extend its plant, purchase more modern machinery, and replace old and worn-out construction with new construction. It becomes practically a matter of public necessity that, if bonds such as those involved in this action are to be available and merchantable in the public market, they must be secured through the lien of a mortgage upon such extensions and new property. No other course is practicable if the security and standing of the bonds is to be maintained. If this course is not allowed, the more prosperous and more progressive a corporation issuing the bonds becomes, the less valuable the security of the latter through interchange of old property for new. While it was urged by the counsel for the bank that the point was not expressly involved in some of the cases cited by plaintiff's counsel, the reasoning found in New York Security Co. v. Saratoga Gas Co., 88 Hun, 569, 34 N. Y. Supp. 890, seems to be applicable and forcible. There seems to be no reasonable objection to following the suggestion made in behalf of the judgment creditor, that the property covered by the mortgage should be sold in parcels, the personal property in question covered by the lien of the judgment being sold in a parcel by itself, and last; and the judgment will so provide.

Judgment accordingly.